IN THE CIRCUIT COURT OF PHELPS COUNTY, MISSOURI

FILED
SUE BROWN
PHELPS COUNTY, MO.

CHRISTIANE DALTON, )
Individually and on behalf of all others similarly situated, )
)
Plaintiff, )
) Case No. ____________________
vs. )
)
TARGET CORPORATION, )
)
Defendant. )

**PETITION**

COMES NOW Plaintiff Christiane Dalton ("Plaintiff"), Individually and on behalf of a Class of Similarly Situated Individuals ("Class Members"), by and through her attorneys, and for her causes of action against the defendant, Target Corporation ("Target" or "Defendant"), hereby states to the Court as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff brings this class action under the laws of the state of Missouri seeking compensation for statutory violations of Computer Tampering and Missouri Merchandising Practices Act statutes as well as common-law claims of conversion, trespass to chattels, invasion of privacy by unreasonable intrusion, and unjust enrichment.

2. This matter arises from Target's practices of coding its web pages to cause tracking code—its own and that of third parties—to be downloaded to, stored on, and activated on to the computers of Plaintiff and Class Members in Missouri and elsewhere for the purpose of tracking consumers' internet history and activities. The manner in which Target codes its website prevents Plaintiff and Class Members from detecting or controlling Target and third parties' internet track-

ing code. Target deploys this code to profit from harvesting private information from and about such persons, across their web-browsing activity, even when they specifically set their privacy controls to prevent tracking.

3. Target's actions, as more specifically alleged below, constitute violations of Missouri statutory and common law.

4. Plaintiff brings this action to recover her own damages directly resulting from Target's unlawful actions, and she also brings this action on behalf of and to recover damages for the Class Members, and for equitable and injunctive relief.

5. Target's unlawful actions were perpetrated against Plaintiff and Class Members on or after November 26, 2005 (the "Class Period").

**JURISDICTION**

6. This Court has subject matter jurisdiction over this action because the amount in controversy exceeds the minimum jurisdictional limits of the Court. Defendant is not a Missouri citizen for purposes of federal court diversity analysis. No individual Plaintiff's or Class Member's claim is equal to or greater than seventy-five thousand dollars ($75,000), inclusive of costs and attorneys' fees. Moreover, the total damages of Plaintiff and Class Members, inclusive of costs and attorneys' fees, will not exceed $4,999,999 and is less than the five million dollar ($5,000,000) minimum threshold to create federal court jurisdiction.

7. Plaintiff and Class Members stipulate pursuant to *Bell v. Hershey,* 557 F.3d 953 (8th Cir. 2009) and *Rolwing v. Nestle Holdings, Inc.*, 666 F.3d 1069 (8th Cir. 2012) that they seek to recover no more than $4,999,999 in this case. Plaintiff further stipulates that she does not and will not seek or accept punitive damages in this case and that she disclaims all claims and causes of action which exist or may exist under Federal Law. As such, there is neither diversity jurisdiction,

nor Class Action Fairness Act jurisdiction, nor a federal question for this claim to be brought in federal court. Pursuant to Missouri Rule of Civil Procedure 8(a), this pleading demands unliquidated damages. Accordingly, it is intended, and shall by rule be interpreted, to limit recovery to an amount less than that required for diversity jurisdiction in federal court.

8. This Court has personal jurisdiction over Target pursuant to Missouri Code § 506.500, as Target has had more than minimum contact with the State of Missouri and has availed itself of the privilege of conducting business in this state. In addition, as explained below, Target has committed affirmative tortious acts within the State of Missouri that give rise to civil liability.

9. Venue is proper in this forum pursuant to Missouri Code § 508.010, because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this county.

**PARTIES**

10. Christiane Dalton is a citizen and resident of Rolla, Missouri who, during the Class Period, accessed Target's website at www.target.com.

11. Target Corporation is incorporated in the State of Minnesota and headquartered in the State of Minnesota. Target is a chain of discount retail stores in interstate commerce engaged in the sale of clothing, shoes, jewelry, health and beauty products, electronics, compact discs, DVDs, bedding, kitchen supplies, sporting goods, toys, pet supplies, automotive supplies, and hardware supplies to include substantial Internet sales to residents of the State of Missouri through its website, www.target.com. Target can be served through its Registered Agent, C T Corporation System, 120 South Central Avenue, Clayton, Missouri 63105.

**ALLEGATIONS OF FACT**

12. Target is a leading online provider of clothing, shoes, jewelry, health and beauty products, electronics, compact discs, DVDs, bedding, kitchen supplies, sporting goods, toys, pet supplies, automotive supplies, and hardware supplies.

13. Target has invested substantial resources in developing a website to attract consumers, such as Plaintiff and Class Members, to visit.

14. Target generates revenue from third parties who wish to track Plaintiff's and Class Members' online activity by installing code on Plaintiff's and Class Members' own computer hard drives. The more visitors that Target attracts to its website, the more revenue it earns from the third parties.

15. Target coded its web pages to cause its tracking code and third parties' tracking code to be downloaded to, stored on, and activated on to the computers of Plaintiff and Class Members in Missouri and elsewhere.

16. Target and the third parties whose code it includes on its web pages engage in tracking Plaintiff and Class Members because of the economic value of the information they collect about Plaintiff and Class Members, and their browsing activities.

17. Target is responsible for and controls the code that comprises its web pages, including its own and third parties' tracking code, and Target causes such code to be incorporated into its web pages in way that will cause it to be activated when Plaintiff and Class Members visit Target's website.

18. Target was able to create this valuable web property and generate substantial revenue through its conduct in violation of Missouri law, as described herein.

Target's Deposit of Tracking Cookies on Plaintiff's and Class Members' Computers

19. Target coded the pages of its website so that, within the first minute of the Plaintiff and each Class Member's first visit to Target's home page, Target deposited approximately four browser cookies on their computer hard drives, all of which persisted after the Plaintiff and Class Members terminated their browsing sessions. These cookies were set to expire anywhere from one month to 50 years from the dates of the Plaintiff's and Class Members' visits.

20. Target assigned the Plaintiff and Class Member a unique user ID, which it stored in cookies it created on the Plaintiff's and Class Members' hard drives.

21. Target used these cookies to track the Plaintiff's and Class Members' web-browsing activities on the web pages of Target's site. On the Plaintiff's and Class Members' subsequent visits to the site, Target accessed and updated the cookies and updated its profiles of the Plaintiff and Class Members.

22. In addition, Target has coded the pages of its website so that, within the same first minute of the Plaintiff's and Class Member's first visit to Target's home page, approximately ten third parties deposited approximately 24 more browser cookies on the Plaintiff's and Class Members' hard drives, 22 of which persisted after the Plaintiff and Class Members terminated their browsing sessions, with expiration dates anywhere from the next day to 68 years from the dates of the Plaintiff's and Class Members' visits.

23. Like Target, third parties assigned their own unique IDs to Plaintiff and each Class Member to track their web-browsing activities and profile them; however, the third parties used their ID-linked cookies to track Plaintiff and Class Members not only on Target's website, but on the many other websites that incorporated the third parties' code—so that the Plaintiff and Class Members were tracked throughout their web browsing.

24. Further, Target shared the ID codes it assigns Plaintiff and each Class Member with the third parties whose code it incorporated on its website, enabling Target and the third parties to share tracking information.

25. Similarly, third parties tracking Plaintiff and each Class Member shared unique user IDs with each other, to further facilitate their uninterrupted tracking of the Plaintiff and Class Members throughout their web browsing.

26. Target caused these cookies to be deposited without the Plaintiff's and Class Members' permission or consent and before they even had a chance to scroll to the privacy policy and terms of use/service link positioned at the bottom of Target's home page. Thus, Plaintiff and Class Members never had the chance to click on and review it – much less consent or agree to – the terms of Target's privacy policy and terms of use/service before Target infected their computers with its own and third parties' tracking technologies.

27. Plaintiff's and Class Members' web browsers include tools that give Plaintiff and Class Members some rudimentary privacy controls, including controls to block or delete cookies; however, as further detailed below, Target coded its web pages to circumvent Plaintiff's and Class Members' exercise of those privacy controls.

**Target's Circumvention of Plaintiff's and Class Members' Privacy Controls**

28. To track Plaintiff and each Class Member regardless of their privacy controls that affected cookie-based tracking, Target used other tracking mechanisms that circumvented those privacy controls. It did so by coding its web pages to store its tracking information—including the IDs it assigned to Plaintiff and each Class Member—in other, non-cookie storage areas on the Plaintiff's and Class Members' computer hard drives.

29. These other storage areas include LSO files. An LSO (Adobe local shared object) is a type of file created when a website uses Adobe Flash technology, which was designed to enable websites to incorporate video and audio content in their websites. For example, an LSO can be used to store a consumer's audio volume preferences for playing news clips on the Web pages a consumer downloads from a news Website, regardless of which browser (*e.g.*, Internet Explorer, Firefox, Safari) the consumer is using. Flash LSOs were not designed to be used as substitutes and backups for cookies, to circumvent Plaintiff and Class Members' privacy controls. Although LSOs are not browser cookies, they are sometimes rhetorically referred to as "Flash cookies" they are being used, as in this matter, as a backup or substitute for cookies to circumvent privacy controls.

30. Plaintiff and Class Members are not generally aware that LSO files may be used to circumvent their privacy controls and store tracking information about them, and Plaintiff and Class Members do not have any reasonable means to learn of or control LSO files used for tracking.

31. If the Plaintiff and Class Members engage in self-help by learning about and executing the technical steps required to locate and delete Target's cookies and LSOs, Target's site sometimes becomes non-functional.

32. Plaintiff and Class Members did not consent to Target's use of cookies and LSOs on their computers to circumvent their privacy controls to conduct and facilitate ongoing, web-wide collection of their private information for tracking and profiling.

33. Target's pervasive and clandestine actions in accessing Plaintiff's and Class Members' computers in Missouri, and their tracking of their Internet activities, violates Plaintiff's and Class Members' reasonable expectations of privacy, as well as Missouri civil and criminal law.

Further, Missouri expressly recognizes that a violation of its criminal statutes prohibiting computer tampering trespass gives rise to and affords Plaintiff and Class Members a civil right of action. *See* Mo. Rev. Stat., § 537.525.

34. The market for Plaintiff's and Class Members' private information is so robust that exchanges have been established where companies can quickly and efficiently buy and sell the information they have gathered by invading Plaintiff's and Class Members' privacy rights.

35. Armed with the knowledge that the data collected from unsuspecting Internet users is worth so much, Target used cookies and Flash LSOs to access computers in the State of Missouri owned by Plaintiff and Class Members to collect valuable data without their knowledge and consent.

36. Target generated revenue from third parties by using Plaintiff's and Class Members' computer hard drives for tracking, enabling the third parties' to do so, and by sharing tracking information with those third parties.

37. Target did not share this revenue with Plaintiff and each Class Member.

38. Target's actions in this regard were in violation of Plaintiff's and Class Members' privacy rights under Missouri law.

**Damages Resulting from Target's Conduct**

39. Plaintiff has suffered actual and nominal damages as a result of Target's unlawful actions as alleged herein. Categorically, the type and nature of damages sustained by Plaintiff are the same or substantially similar to such damages sustained by Class Members. Accordingly, damages alleged hereafter will be alleged as Plaintiff's damages which have been incurred individually and collectively by the Plaintiff and each of the Class Members.

40. Target's unauthorized and unlawful attachment of tracking devices to Plaintiff's respective computer, as described and explained herein, has caused physical damage to the Plaintiff's computer inasmuch as such tracking devices are considered to be computer contaminants which cause injury to the computers' data storage and processing capabilities and otherwise interfere with Plaintiff's intended uses and purposes for her property. Target's Flash LSOs unlawfully and without authorization identified, acquired, and conveyed Plaintiff's personal, financial and browser history information back to Target for Target's use, benefit and financial gain. The data and information harvested by Target has an economic value for purposes of marketing, research and shopping profile purposes. Target's theft of such data and information without notice or compensation to Plaintiff has deprived Plaintiff of said economic value.

41. Target's website does not offer any form of notice or opt-out capabilities which would reasonably allow a website visitor to prevent the attachment of Target's Flash LSOs to his or her computer. Nor does Target offer anti-Flash cookie devices or applications which would permit a website visitor to remove or otherwise decontaminate his or her computer from Target's tracking devices. Consequently, Plaintiff has incurred damage in the sense that there is an economic expense associated with the professional removal of the Target tracking devices and the repair of the damages described above.

42. In addition to the actual damages as described herein above, Plaintiff has also incurred unspecified nominal damages recoverable at law as a result of Target's unlawful conduct.

43. Plaintiff and each Class Member have sustained losses, injuries, damages which include, but are not limited to:

A. The damages resulting from and the cost necessary to hire a computer consultant to identify and remove Flash LSOs placed on Plaintiff's and Class Members' computers;

B. The cost necessary to install software to remove the Flash LSOs placed on Plaintiff's and Class Members' computers;

C. The Fair Market Value of the hard drive space occupied by both the Flash LSOs placed on Plaintiff's and Class Members' computers and the software needed to remove those Flash LSOs;

D. The damages caused to Plaintiff's and Class Members' property including impaired operating capability and functionality, lost memory and impaired and slower performance of their computers;

E. The damages caused to Plaintiff's and Class Members' property as their computers have sustained and will sustain long term slowdowns, decreased performance, diminished functionality and reduced memory over time as a result of Target's placement of Flash LSOs or computer contaminants on their computers, which usurp memory;

F. The damages caused by Target to Plaintiff and Class Members who have incurred and will incur actual out-of-pocket expenses to repair their computers due to impaired performance and decreased functionality caused by the Flash LSOs and computer contaminants installed by Target on Plaintiff's and Class Members' computers;

G. The damages caused by Target to Plaintiff and Class Members who have incurred and will incur actual out-of-pocket expenses to replace their computers before the expiration of the computers' functional life expectancy due to impaired performance and decreased functionality caused by the Flash LSOs and computer contaminants installed by Target on Plaintiff's and Class Members' computers;

H. The Fair Market Value of the personal and web browsing information Target stole from Plaintiff and Class Members;

I. The Fair Market Value of any reports, analytics and analysis of the stolen data obtained in violation of Missouri law; and

J. Disgorgement of the increased value of Target's web properties, profit from merchandise sales and any additional revenue obtained as a result of the theft of personal data and other illegal and improper conduct.

## CLASS ACTION ALLEGATIONS

44. Pursuant to Missouri Rule of Civil Procedure 52.08, Plaintiff brings this action on her own behalf and on behalf of a proposed class of all other similarly situated persons ("Class Members" of the "Class") consisting of:

> all persons residing in the State of Missouri who used computers in the State of Missouri, and whose computers, and/or computer systems, networks, programs, and/or data residing on or connected to those computers, were, through Defendant's conduct, modified, damaged, accessed and/or altered and/or from which whose private information was acquired without such persons' authorization or consent.

45. Excluded from the Class definition are: (a) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (b) any entity in which Defendant has a controlling interest, to include, but not limited to, their legal representative, heirs, and successors; (c) all persons who are presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (d) any judicial officer in the lawsuit and/or persons within the third degree of consanguinity to such judge.

46. The Class is comprised of over one thousand persons located in the State of Missouri. It is therefore impractical to bring all members of the Class before the Court individually.

47. There exist questions of law and fact common to all members of the Class. These common questions of law and fact predominate over any individual questions affecting Class Members. Common legal and factual questions include, but are not limited to, the following:

A. Whether Defendant modified, damaged, accessed and/or altered Plaintiff's and Class Members' computers;

B. Whether Defendant disclosed or took data, programs, or supporting documentation, residing or existing internal or external to Plaintiff's and Class Members' computers, computer systems, or computer networks;

C. Whether Defendant acted with intent;

D. Whether Defendant had authorization to modify, damage, access and/or alter Plaintiff's and Class Members' computers;

E. Whether Plaintiff and Class Members are entitled to compensatory damages, and the amount of such damages;

F. Whether Defendant's privacy policy discloses the use of Flash LSOs;

G. Whether Defendant's privacy policy is misleading;

H. Whether Defendant's privacy policy is even applicable to the Plaintiff and Class Members;

I. Whether a privacy policy is binding when the Flash LSOs are placed before the policy can be read and Class Members exit the site;

J. Whether the data on Plaintiff's and Class Members' computers is their personal property;

K. Whether selling data gather from Plaintiff's and Class Members' computers constitutes conversion of their property;

L. Whether Defendant's tracking of Plaintiff's and Class Members' web activity constitutes an invasion of privacy;

M. Whether Plaintiff and Class Members are entitled to recover for the following damages and injuries:

I. The damages resulting from and the cost necessary to hire a computer consultant to identify and remove Flash LSOs placed on Plaintiff's and Class Members' computers;

II. The cost necessary to install software to remove the Flash LSOs placed on Plaintiff's and Class Members' computers;

III. The Fair Market Value of the hard drive space occupied by both the Flash LSOs placed on Plaintiff's and Class Members' computers and the software needed to remove those Flash LSOs;

IV. The damages caused to Plaintiff's and Class Members' property including impaired operating capability and functionality, lost memory and impaired and slower performance of their computers;

V. The damages caused to Plaintiff's and Class Members' property as their computers will sustain long term slow-downs, decreased performance, diminished functionality, and reduced memory as a result of the Defendant's placement of Flash LSOs or computer contaminants on their computers, which usurp memory;

VI. The damages caused by Defendant to Plaintiff and Class Members who will incur out-of-pocket expenses to repair their computers due to impaired performance and decreased functionality caused by the Flash LSOs and computer contaminants installed by Defendant on Plaintiff's and Class Members' computers;

VII. The damages caused by Defendant to Plaintiff and Class Members who will incur actual out-of-pocket expenses to replace their computers before the expiration of their computers' functional life expectance due to impaired performance and decreased functionality caused by the Flash LSOs and computer contaminants installed by Defendant on Plaintiff's and Class Members' computers;

VIII. The Fair Market Value of the personal and web browsing information Defendant stole from Plaintiff and Class Members;

IX. The Fair Market Value of any reports, analytics and analysis of the stolen data obtained in violation of Missouri law; and

X. Disgorgement of the increased value of Defendant's web properties, profit from merchandise sales and any additional revenue obtained as a result of the theft of personal data and other illegal and improper conduct.

48. The claims of the representative Plaintiff are typical of the claims of the Class in that:

A. Plaintiff's computer, like the computers of all Class Members, was accessed and altered by Defendant;

B. Plaintiff, like all Class Members, has been damaged by Defendant's unlawful actions; and

C. The factual basis and causes of action for the claims Plaintiff asserts are common to all Class Members and represent a common thread of misconduct resulting in injury to all Class Members.

49. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests which conflict with the Class, and have retained attorneys who are experienced in the prosecution of complex consumer class action litigation involving computers and the Internet.

50. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joining all members in impracticable, and this action will be manageable as a class action. There will be no difficulty in the management of this class action.

51. Prosecuting individual actions would unduly increase the cost of litigation and cause delay, not only to Plaintiff and Class Members, but also to Defendant and the Court.

52. In contrast, a class action will avoid case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of each Plaintiff and Class Member. These benefits would result from the comprehensive and efficient supervision of the litigation by a single court.

53. Class treatment of the claims asserted by Plaintiff is superior to other methods of adjudicating the claims of the Class in that:

A. The prosecution of separate actions by individual members of the class would create a foreseeable risk of inconsistent or varying adjudications which would establish incompatible results and standards of conduct for Defendant;

B. Adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the separate adjudications or would substantially impair or impede their ability to protect their own interests; and

C. Class action treatment avoids the waste and duplication inherent in numerous individual actions and conserves the resources of the Courts.

54. Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## COUNT I
## COMPUTER TAMPERING IN VIOLATION OF MISSOURI LAW

55. Plaintiff re-states and incorporates paragraphs 1-54 as if fully set out herein.

56. Defendant's unlawful actions were perpetrated against Plaintiff and Class Members in violation of Missouri's Computer Tampering Statute, Mo. Rev. Stat. § 537.525, and §§ 569.095 (tampering with computers) 569.097 (tampering with computer equipment), and 569.099 (tampering with computer users).

57. For purposes of this act, Plaintiff and Class Members are the owners or lessees of the computer systems, computer networks, computer programs, computer services or data that are subject to Defendant's tampering activities.

### Tampering With Computers

58. Defendant violated Mo. Rev. Stat., § 569.095 by:

A. Modifying or destroying data or programs residing or existing internal to Plaintiff's and Class Members' computers, computer systems, or computer networks;

B. Modifying or destroying data or programs or supporting documentation residing or existing external to Plaintiff's and Class Members' computers, computer systems, or computer networks;

C. Disclosing or taking data, programs, or supporting documentation, residing or existing internal or external to Plaintiff's and Class Members' computers, computer systems, or computer networks;

D. Disclosing or taking a password, identifying code, personal identification number, or other confidential information about Plaintiff's and Class Members' computer systems or networks that is intended to or does control access to the computer system or network;

E. Accessing Plaintiff's and Class Members' computers, a computer systems, or computer networks, and intentionally examines information about them, including their personal, financial, and web browsing information and other personal and private information and data stored on their computers; and/or

F. Receiving, retaining, using, or disclosing data Defendant knows or believes were obtained in violation of this subsection.

59. Defendant's tampering with computer data was done knowingly and without authorization or without reasonable grounds to believe that it had such authorization in that Defendant downloaded Flash LSOs and allowed third parties to download Flash LSOs to Plaintiff's and Class Members' computers before they had the opportunity to review or agree to the placement of tracking devices on their computers.

**Tampering with Computer Equipment**

60. Defendant violated Mo. Rev. Stat § 569.097 by:

A. Modifying, destroying damaging or takings equipment or data storage devices used or intended to be used in Plaintiff's and Class Members' computers, computer systems, or computer networks; and/or

B. Modifying, destroying, damaging or taking Plaintiff's and Class Members' computers, computer systems, or computer networks.

61. Defendant's tampering with computer data was done knowingly and without authorization or without reasonable grounds to believe that it had such authorization in that Defendant downloaded Flash LSOs and allowed third parties to download Flash LSOs to Plaintiff's and Class Members' computers before they had the opportunity to review or agree to the placement of tracking devices on their computers.

**Tampering with Computer Users**

62. Defendant violated Mo. Rev. Stat § 569.099 by:

A. Assessing or causing to be assessed Plaintiff's and Class Members' computers, computer systems, or computer networks; and/or

B. Denies or causes the denial of computer system services to an authorized user of such computer system services, which, in whole or in part, is owned by, under contract to, or operated for, or on behalf of, or in conjunction with another.

63. Defendant's tampering with computer data was done knowingly and without authorization or without reasonable grounds to believe that it had such authorization in that Defendant downloaded Flash LSOs and allowed third parties to download Flash LSOs to Plaintiff's and Class Members' computers before they had the opportunity to review or agree to the placement of tracking devices on their computers.

64. Defendant's tampering with computer data, equipment and users directly and proximately caused injury and damages to Plaintiff's and Class Members' tangible and intangible property, including injury and damage to their computers, computer systems and computer, and to their personal facts, information, and other data stored thereon. More specifically, Plaintiff and Class Members have sustained losses, injuries, and damages which include, but are not limited to, the following:

A. The damages resulting from and the cost necessary to hire a computer consultant to identify and remove LSOs placed on Plaintiff's and Class Members' computers;

B. The cost necessary to install software to remove the LSOs placed on Plaintiff's and Class Members' computers;

C. The Fair Market Value of the hard drive space occupied by both the LSOs placed on Plaintiff's and Class Members' computers and the software needed to remove them;

D. The damages caused to Plaintiff's and Class Members' property including impaired operating capability and functionality, lost memory and impaired and slower performance of their computers;

E. The damages caused to Plaintiff's and Class Members' property as their computers have sustained and will sustain long term slowdowns, decreased performance, diminished functionality and reduced memory over time as a result of Defendant's placement of LSOs on Plaintiff's and Class Members' computers, which usurp memory;

F. The damages caused by Defendant to Plaintiff and Class Members who have incurred and will incur actual out-of-pocket expenses to repair their computers due to impaired performance and decreased functionality caused by the LSOs installed by Defendant on Plaintiff's and Class Members' computers;

G. The damages caused by Defendant to Plaintiff and Class Members who have incurred or will incur actual out-of-pocket expenses to replace their computers before the expiration of the computers' functional life expectancy due to impaired performance and decreased functionality caused by LSOs installed by Defendant on Plaintiff's and Class Members' computers;

H. The Fair Market Value of the personal and web browsing information Defendant stole from Plaintiff and Class Members;

I. The Fair Market Value of any reports, analytics and analysis of the stolen data obtained in violation of Missouri law; and

J. Disgorgement of the increased value of Defendant's web properties, profit from merchandise sales and any additional revenue obtained as a result of the theft of personal data and other illegal and improper conduct.

65. In accordance with Mo. Rev. Stat § 537.525, Plaintiff and Class Members are entitled to pursue civil claims for relief to recover compensation for their damages as alleged above, and for the costs and reasonable attorneys' fees incurred with regard to bringing this action.

**COUNT II**
**VIOLATION OF MISSOURI MERCHANDISING PRACTICES ACT**

66. Plaintiff re-states and incorporates paragraphs 1-65 as if fully set out herein.

67. Missouri's Merchandising Practices Act prohibits [t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair prac-

tice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce. Mo. Rev. Stat § 407.020.43.

68. Defendant's conduct as described above constitutes the act, use or employment of deception, fraud, false pretenses, false promises, misrepresentation, unfair practices and/or the concealment, suppression, or omission of any material facts in connection with the sale or advertisement of any merchandise in trade or commerce in that:

A. Defendant stored and used repurposed Adobe Flash LSOs on Plaintiff's and Class Members' computers without adequate notice or consent.

B. Defendant disclosed Plaintiff's and Class Members' personal information to third parties without consent and authorization.

C. Defendant represented that website users could avoid being tracked by disabling browser cookies.

69. Defendant concealed, suppressed or omitted the material fact that it would collect and obtain the private information of Plaintiff and Class Members in connection with the sale and/or advertisement of goods and/or services offered on its website.

70. Defendant surreptitiously took from Plaintiff and Class Members personal information they did not want Defendant to have and which exceeded Defendant's authorization to take, and pursuant to privacy policies in which Defendant misleadingly described what it would take and how —which personal information Defendant then exploited to derive for itself lucrative gains from its advertising business; and (2) Defendant consumed the valuable computer resources belonging to Plaintiff and Class Members in the process.

71. The personal information of Plaintiff and Class Members was property belonging to them. In addition, the right of Plaintiff and Class Members to use their computers, without having repurposed LSOs placed on them, constituted a significant right relating to the use of spe-

cific personal property, without interference by Defendant through deception, false pretenses, misrepresentation and unauthorized access.

72. Plaintiff and Class Members have purchased merchandise from www.target.com primarily for personal, family or household purposes and thereby suffered an ascertainable loss of money or property, real or personal, as a result of Defendant's unlawful conduct as alleged herein.

73. Plaintiff and Class Members have sustained losses, injuries, and damages which include, but are not limited to, the following:

A. The damages resulting from and the cost necessary to hire a computer consultant to identify and remove LSOs placed on Plaintiff's and Class Members' computers;

B. The cost necessary to install software to remove the LSOs placed on Plaintiff's and Class Members' computers;

C. The Fair Market Value of the hard drive space occupied by both the LSOs placed on Plaintiff's and Class Members' computers and the software needed to remove them;

D. The damages caused to Plaintiff's and Class Members' property including impaired operating capability and functionality, lost memory and impaired and slower performance of their computers;

E. The damages caused to Plaintiff's and Class Members' property as their computers have sustained and will sustain long term slowdowns, decreased performance, diminished functionality and reduced memory over time as a result of Defendant's placement of LSOs on Plaintiff's and Class Members' computers, which usurp memory;

F. The damages caused by Defendant to Plaintiff and Class Members who have incurred and will incur actual out-of-pocket expenses to repair their computers due to impaired performance and decreased functionality caused by the LSOs installed by Defendant on Plaintiff's and Class Members' computers;

G. The damages caused by Defendant to Plaintiff and Class Members who have incurred and will incur actual out-of-pocket expenses to replace their computers before the expiration of the computers' functional life expectancy due to impaired performance and decreased func-

tionality caused by LSOs installed by Defendant on Plaintiff's and Class Members' computers;

H. The Fair Market Value of the personal and web browsing information Defendant stole from Plaintiff and Class Members;

I. The Fair Market Value of any reports, analytics and analysis of the stolen data obtained in violation of Missouri law; and

J. Disgorgement of the increased value of Defendant's web properties, profit from merchandise sales and any additional revenue obtained as a result of the theft of personal data and other illegal and improper conduct.

## COUNT III
## CONVERSION

74. Plaintiff re-states and incorporates paragraphs 1-73 as if fully set out herein.

75. Defendant's unlawful actions as alleged above also constitute Conversion of Plaintiff's and Class Members' personal property in tortious violation of Missouri common law, for which they are entitled to recover their actual and nominal damages as alleged herein.

76. Plaintiff and Class Members own and are entitled to possession of their computers, computer programs, computer systems, and computer networks, which constitute their separate respective items of personal property. Likewise, Plaintiff and Class Members own and are entitled to possession of the electronic diary of private and proprietary data, (*i.e.* personal, financial, and web browsing facts and other personal and private information), as recorded and maintained on their respective computers, which also constitute Plaintiff's and Class Members' personal property.

77. Defendant intentionally deployed LSOs for the purpose of unlawfully taking possession of and exerting dominion and control over said items of personal property with an intent to exercise some control them and in denial of or inconsistent with Plaintiff's and Class Members'

rights and interests therein. Examples of Defendant's distinct actions in this regard would include, but are not limited to, the following:

A. Accessing and commandeering Plaintiff's and Class Members' computers and computer files without their knowledge, consent or authority;

B. Infesting said computers with instructional code that contaminated, altered and/or interfered with the normal settings, processes, and operations of the computers;

C. Commanding said computers to secretly record and transmit back to Defendant the electronic diaries of certain personal, financial, and web browsing information stored thereon;

D. Harvesting, viewing, analyzing, aggregating, and otherwise manipulating said private information for Defendant's marketing purposes; and

E. Secretly taking, transferring, and appropriating said personal and private property for Defendant's own economic gain and depriving Plaintiff and Class Members from any of the proceeds thereof.

78. As a result of Defendant's actions described above, Plaintiff and Class Members were deprived of the right to possess their computers, computer programs, computer systems, and computer networks, as well as the personal and private information residing thereon.

79. Defendant's intentional exercise of dominion or control over Plaintiff's and Class Members' property seriously interfered with the right of Plaintiff and Class Members to control said property such that Defendant may justly be required to pay Plaintiff and Class Members the full value of the property.

80. Defendant's actions constituting Conversion directly and proximately caused injury and damages to Plaintiff's and Class Members' tangible and intangible property, including injury and damage to their computers and computer programs, and to their personal facts, infor-

mation, and other data stored thereon. More specifically, Plaintiff and Class Members have sustained losses, injuries, and damages, which include, but are not limited to, the following:

A. The damages resulting from and the cost necessary to hire a computer consultant to identify and remove LSOs placed on Plaintiff's and Class Members' computers;

B. The cost necessary to install software to remove the LSOs placed on Plaintiff's and Class Members' computers;

C. The Fair Market Value of the hard drive space occupied by both the Flash LSOs placed on Plaintiff's and Class Members' computers and the software needed to remove those LSOs;

D. The damages caused to Plaintiff's and Class Members' property including impaired operating capability and functionality, lost memory and impaired and slower performance of their computers;

E. The damages caused to Plaintiff's and Class Members' property as their computers have sustained and will sustain long term slowdowns, decreased performance, diminished functionality and reduced memory over time as a result of Defendant's placement of Flash LSOs or computer contaminants on Plaintiff's and Class Members' computers, which usurp memory;

F. The damages caused by Defendant to Plaintiff and Class Members who have incurred and will incur actual out-of-pocket expenses to repair their computers due to impaired performance and decreased functionality caused by the LSOs and computer contaminants installed by Defendant on Plaintiff's and Class Members' computers;

G. The damages caused by Defendant to Plaintiff and Class Members who have incurred and will incur actual out-of-pocket expenses to replace their computers before the expiration of the computers' functional life expectancy due to impaired performance and decreased functionality caused by the LSOs and computer contaminants installed by Defendant on Plaintiff's and Class Members' computers;

H. The Fair Market Value of the personal and web browsing information Defendant stole from Plaintiff and Class Members;

I. The Fair Market Value of any reports, analytics and analysis of the stolen data obtained in violation of Missouri law; and

J. Disgorgement of the increased value of Defendant's web properties, profit from merchandise sales and any additional revenue obtained as a result of the theft of personal data and other illegal and improper conduct.

## COUNT IV
## COMMON LAW TRESPASS TO CHATTELS

81. Plaintiff re-states and incorporates paragraphs 1-80 as if fully set out herein.

82. Defendant's actions as alleged above also constitute trespass of Plaintiff's and Class Members' personal property in violation of Missouri common law, for which they are entitled to recover their actual and nominal damages as alleged herein.

83. Plaintiff's and Class Members' computers, computer programs, computer systems, and computer networks constitute their separate respective items of personal property, of which they had possession.

84. The right of Plaintiff and Class Members to use their computers without having unwanted tracking devices placed on them constituted a materially valuable right relating to the use of specific personal property belonging to Plaintiff and Class Members.

85. Likewise, the electronic diary of private and proprietary data, (*i.e.* personal, financial, and web browsing facts and other personal and private information), as recorded and maintained on their respective computers, also constitutes Plaintiff's and Class Members' personal property, of which they had possession.

86. Plaintiff and Class Members each had and have a legally protected economic interest in their personal information.

87. By intentionally placing repurposed LSOs on the computers belonging to Plaintiff and Class Members, through deception and in violation of a Missouri penal computer tampering statute, Defendants deliberately intermeddled with chattels of Plaintiff and Class Members and

deprived Plaintiff and Class Members of their right to use their computers without having such tracking devices surreptitiously placed on them.

88. Defendant's intentional installment and repurposing of Flash LSOs on Plaintiff and Class Members' computers wrongfully interfered with Plaintiff's and Class Members' rights to the private possession of said personal property. Defendant then proceeded to unlawfully take said personal property and carry the same away for its own uses, without notice, consent, or compensation to Plaintiff and Class Members. Defendant's actions materially impaired the condition, quality, and value of said personal property. Examples of Defendant's actions in this regard would include, but are not limited to, the following:

A. Secretly invading the Plaintiff's and Class Members' computers and computer files without their knowledge, consent or authority;

B. Contaminating said computers with instructional code and tracking devices that interfered with the Plaintiff's and Class Members' settings, processes, and operations of their respective computers;

C. Implanting and impregnating the code and tracking devices with cloaking features designed and intended to evade detection and deletion, and to automatically respawn if deleted, such that Defendant was actively interfering with Plaintiff's and Class Members' ability to peacefully possess and control their own computers without Defendant watching and recording their actions; and

D. Electronically locating, capturing and forwarding the Plaintiff's and Class Members' computer files containing certain personal, financial, and web browsing information stored therein, and misappropriating the same for Defendant's own economic gain.

89. Defendant's actions constitute common law tort of trespass to chattels and directly and proximately caused actual and nominal damages to Plaintiff's and Class Members' tangible and intangible property, including injury and damage to their computers and computer programs, and to their personal facts, information, and other data stored thereon. More specifically, Plaintiff

and Class Members have sustained losses, injuries, and damages which include, but are not limited to, the following:

A. The damages resulting from and the cost necessary to hire a computer consultant to identify and remove repurposed LSOs placed on Plaintiff's and Class Members' computers;

B. The cost necessary to install software to remove the repurposed LSOs placed on Plaintiff's and Class Members' computers;

C. The Fair Market Value of the hard drive space occupied by both the repurposed LSOs placed on Plaintiff's and Class Members' computers and the software needed to remove those files;

D. The damages caused to Plaintiff's and Class Members' property including impaired operating capability and functionality, lost memory and impaired and slower performance of their computers;

E. The damages caused to Plaintiff's and Class Members' property as their computers have sustained and will sustain long term slowdowns, decreased performance, diminished functionality and reduced memory over time as a result of Defendant's placement of repurposed LSOs or computer contaminants on their computers, which usurp memory;

F. The damages caused by Defendant to Plaintiff and Class Members who have incurred and will incur actual out-of-pocket expenses to repair their computers due to impaired performance and decreased functionality caused by the repurposed LSOs and computer contaminants installed by Defendant on Plaintiff's and Class Members' computers;

G. The damages caused by Defendant to Plaintiff and Class Members who have incurred and will incur actual out-of-pocket expenses to replace their computers before the expiration of the computers' functional life expectancy due to impaired performance and decreased functionality caused by the repurposed LSOs and computer contaminants installed by Defendant on Plaintiff's and Class Members' computers;

H. The Fair Market Value of the personal and web browsing information Defendant stole from Plaintiff and Class Members;

I. The Fair Market Value of any reports, analytics and analysis of the stolen data obtained in violation of Missouri law; and

J. Disgorgement of the increased value of Defendant's web properties, profit from merchandise sales and any additional revenue obtained as a

result of the theft of personal data and other illegal and improper conduct.

## COUNT V
## INVASION OF PRIVACY BY UNREASONABLE INTRUSION

90. Plaintiff re-states and incorporates paragraphs 1-89 as if fully set out herein.

91. Defendant's actions as described above, and as more specifically alleged in this Count, also constitutes Invasion of Privacy by Unreasonable Intrusion upon Plaintiff and Class Members' seclusion and solitude in violation of Missouri common law, for which they are entitled to recover actual and nominal damages.

92. Plaintiff and Class Members own and used computers to which third parties and/or members of the general public did not have access, for purposes they reasonably believed to be private and confidential. The personal and private information residing on Plaintiff's and Class Members' computers and the nature of Plaintiff's and Class Members' computer usage constitute secret and private subject matters. Plaintiff and Class Members have a right to keep that subject matter private.

93. Plaintiff and Class Members used their computers to connect to the Internet via their web browsers, which include privacy controls designed to prevent the improper and unauthorized use of cookies during and after browsing sessions. Plaintiff and Class Members reasonably believed and legitimately expected the website pages they visited, and the information exchanged with or between them and any particular website, constituted a private viewing and/or exchange of information which could not be viewed or recorded by anyone other than the parties to that particular exchange of information. Their expectation of privacy was the same they legitimately expected to enjoy while viewing printed materials in the solitude of their homes or in communicating personal and confidential information over a private telephone line. Plaintiff and Class Members had no reason to suspect or believe that anyone, including Defendant, would be

able to tap into their computers, plant a repurposed LSO in a hidden folder, peer into their web browsing activities and record information they held and considered to be private and confidential. Defendant thus obtained information about Plaintiff and Class Members through unreasonable means. Defendant's unreasonable intrusions upon the privacy of Plaintiff and Class Members were of a kind that would be highly offensive to a reasonable person as the result of conduct to which a reasonable person would strongly object.

94. Defendant's deployment and use of repurposed Adobe Flash LSOs constitutes an intentional and unreasonable intrusion upon Plaintiff's and Class Members' solitude and seclusion. Defendant intentionally pursued the course of conduct described herein, in violation of a Missouri computer tampering statute, and knowing, or being substantially certain, that it lacked the necessary legal authority or personal permission to engage in this activity. Examples of Defendant's offensive and intrusive actions in this regard which include, but are not limited to, the following:

A. Tapping into the Plaintiff's and Class Members' computers, browsing software, and information files;

B. Contaminating said computers with instructional code and tracking devices which intruded upon and interfered with the Plaintiff's and Class Members' settings, processes, and operations of their own respective computers;

C. Implanting and impregnating the code and tracking devices with cloaking features designed and intended to unlawfully evade detection and deletion, and to automatically respawn if deleted, such that Defendant was actively invading and intruding upon Plaintiff's and Class Members' ability to privately possess and use their own computers in the seclusion of their homes and/or other private locations without Defendant watching, eavesdropping, and recording their every web browsing action; and

D. Like planting an automated video camera into the sanctity of the most private portions of one's home, Defendant's tracking devices captured the Plaintiff's and Class Members' private and confidential data and

activities, *i.e.* their personal, financial, and web browsing information, and then misappropriated the same for Defendant's own economic gain.

95. Defendant's actions directly and proximately caused Plaintiff and Class Members actual and nominal damages they seek to recover in accordance with Missouri law. More specifically, Plaintiff and Class Members have sustained losses, injuries, and damages which include, but are not limited to, the following:

A. The damages resulting from and the cost necessary to hire a computer consultant to identify and remove repurposed Flash LSOs placed on Plaintiff's and Class Members' computers;

B. The cost necessary to install software to remove the repurposed Flash LSOs placed on Plaintiff's and Class Members' computers;

C. The Fair Market Value of the hard drive space occupied by both the Flash LSOs placed on Plaintiff's and Class Members' computers and the software needed to remove those repurposed Flash LSOs;

D. The damages caused to Plaintiff's and Class Members' property including impaired operating capability and functionality, lost memory and impaired and slower performance of their computers;

E. The damages caused to Plaintiff's and Class Members' property as their computers have sustained and will sustain long term slowdowns, decreased performance, diminished functionality and reduced memory over time as a result of Defendant's placement of repurposed Flash LSOs or computer contaminants on their computers, which usurp memory;

F. The damages caused by Defendant to Plaintiff and Class Members who have incurred and will incur actual out-of-pocket expenses to repair their computers due to impaired performance and decreased functionality caused by the repurposed Flash LSOs and computer contaminants installed by Defendant on Plaintiff's and Class Members' computers;

G. The damages caused by Defendant to Plaintiff and Class Members who have incurred and will incur actual out-of-pocket expenses to replace their computers before the expiration of the computers' functional life expectancy due to impaired performance and decreased functionality caused by the repurposed Flash LSOs and computer contam-

inants installed by Defendant on Plaintiff's and Class Members' computers;

H. The Fair Market Value of the personal and web browsing information Defendant stole from Plaintiff and Class Members;

I. The Fair Market Value of any reports, analytics and analysis of the stolen data obtained in violation of Missouri law; and

J. Disgorgement of the increased value of Defendant's web properties, profit from merchandise sales and any additional revenue obtained as a result of the theft of personal data and other illegal and improper conduct.

**COUNT VI**
**UNJUST ENRICHMENT**

96. Plaintiff re-states and incorporates paragraphs 1-95 as if fully set out herein.

97. Defendant's actions as described above, and as more specifically alleged in this Count, also constitute Unjust Enrichment, for which Plaintiff and Class Members are entitled to pursue equitable remedies in accordance with Missouri law.

98. Defendant depends on strategic marketing and merchandising in order to maximize sales and profits. The personal and private information belonging to Plaintiff and Class Members as described herein is economically valuable to Defendant because it facilitates more effective and profitable marketing and merchandising. Through its use of repurposed LSOs and misleading consumers with its privacy policy, Defendant has developed a method to acquire such information without paying for it, *i.e.* by stealing the same. Defendant intentionally engaged in and perpetrated such conduct against Plaintiff and Class Members, without notice, valid consent, or proper authority, *and* without paying them any compensation.

99. Defendant was not entitled to receive this valuable personal and confidential information from Plaintiff and Class Members. Defendant benefitted from the information it ob-



tained by using it to improve its marketing and merchandising activities. As a result, Defendant has received and continues to receive, money to which it is not entitled.

100. Plaintiff and Class Members suffered detriment as a result of Defendant's illegal operative acts, which include, but are not be limited to, the following:

A. Misappropriation of Plaintiff's and Class Members' computers for the purpose of secretly installing coded instructions and tracking devices, which consumed economically valuable storage space and computer processing functions;

B. Implanting and impregnating the code and tracking devices with cloaking features designed and intended to evade detection and deletion, and to automatically respawn if deleted, such that Defendant was actively and repeatedly consuming and interfering with Plaintiff's and Class Members' ability to peacefully possess and use their own computers without Defendant watching;

C. Electronically capturing and taking certain computer files and data belonging to Plaintiff and Class Members which contained economically valuable personal, financial, and web browsing information; and

D. Misappropriating, receiving, and using said computers, files, and personal information for Defendant's own economic enrichment.

101. Defendant's actions in this regard entitle Plaintiff and Class Members to equitable remedies for Unjust Enrichment inasmuch as Defendant misappropriated and received the beneficial use of the Plaintiff's and Class Members' computers, software, storage devices and the economically valuable marketing information and data stored thereon.

102. Equity cannot in good conscience permit Defendant to be economically enriched for such actions at the Plaintiff's and Class Members' expense and in violation of Missouri criminal statutes prohibiting computer tampering, and therefore restitution and/or return of such economic enrichment is required. In this regard the Plaintiff and Class Members are entitled to restitution and other relief which would include, but not be limited to, the following:

A. The damages resulting from and the cost necessary to hire a computer consultant to identify and remove repurposed Flash LSOs placed on Plaintiff's and Class Members' computers;

B. The cost necessary to install software to remove the repurposed Flash LSOs placed on Plaintiff's and Class Members' computers;

C. The Fair Market Value of the hard drive space occupied by both the repurposed Flash LSOs placed on Plaintiff's and Class Members' computers and the software needed to remove those LSOs;

D. The damages caused to Plaintiff's and Class Members' property including impaired operating capability and functionality, lost memory and impaired and slower performance of their computers;

E. The damages caused to Plaintiff's and Class Members' property as their computers have sustained and will sustain long term slowdowns, decreased performance, diminished functionality and reduced memory over time as a result of Defendant's placement of repurposed Flash LSOs or computer contaminants on Plaintiff's and Class Members' computers, which usurp memory;

F. The damages caused by Defendant to Plaintiff and Class Members who have incurred and will incur actual out-of-pocket expenses to repair their computers due to impaired performance and decreased functionality caused by the repurposed Flash LSOs and computer contaminants installed by Defendant on Plaintiff's and Class Members' computers;

G. The damages caused by Defendant to Plaintiff and Class Members who have incurred and will incur actual out-of-pocket expenses to replace their computers before the expiration of the computers' functional life expectancy due to impaired performance and decreased functionality caused by the repurposed Flash LSOs and computer contaminants installed by Defendant on Plaintiff's and Class Members' computers;

H. The Fair Market Value of the personal and web browsing information Defendant stole from Plaintiff and Class Members;

I. The Fair Market Value of any reports, analytics and analysis of the stolen data obtained in violation of Missouri law; and

J. Disgorgement of the increased value of Defendant's web properties, profit from merchandise sales and any additional revenue obtained as a result of the theft of personal data and other illegal and improper conduct.

## PUNITIVE DAMAGES

103. Plaintiff, individually and on behalf of the Class, hereby disclaims any entitlement to punitive or exemplary damages.

WHEREFORE, Plaintiff, individually and as Class Representative on behalf of all similarly situated persons and/or entities, pray the Court grant certification of this case as a class action pursuant to Missouri Rule of Civil Procedure 52.08 and Mo. Rev. Stat., § 407.025 (3); appoint Plaintiff as Class Representative and Plaintiff's counsel as Class counsel; award appropriate monetary damages to Plaintiff and the proposed Class; require Defendant to pay restitution for its unjust enrichment, which, when aggregated with all other elements of damages, costs, and fees, will not exceed $75,000 per Class Member and/or $4,999,999 for the entire Class; award prejudgment interest in an amount which, collectively with all other elements of damages, cost, and fees will not exceed $75,000 per Class Member and/or $4,999,999 for the entire Class; award reasonable and necessary attorneys' fees and costs to Class counsel, which, collectively with all other elements of damages, costs, and fees will not exceed $75,000 per Class Member and/or $4,999,999 for the entire Class.

Dated this ___ day of April, 2012.

Christiane Dalton, Individually, and on Behalf of a Class of Similarly Situated Individuals, Plaintiff

By: ______________________
David L. Steelman, #27334
dsteelman@steelmanandgaunt.com
Patrick J. Horsefield, #50380
phorsefield@steelmanandgaunt.com
STEELMAN, GAUNT & HORSEFIELD
901 Pine Street, Suite 110
Rolla, Missouri 65401
Tel: (573) 458-5231
Fax: (573) 341-8548

COUNSEL FOR PLAINTIFF



Target 41